IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

---

JOSEPH A. RICH,

          Plaintiff,

    -vs-

ASHTABULA COUNTY AIRPORT
AUTHORITY, et al.,

          Defendants.

CASE NO. 1:13 CV 02419

MEMORANDUM OPINION AND ORDER

---

UNITED STATES DISTRICT JUDGE LESLEY WELLS

    The plaintiff Joseph A. Rich leases an airplane hangar from defendant Ashtabula County Airport Authority ("Airport Authority"). After Mr. Rich disconnected metered electrical service to the hanger and installed a portable generator as a primary power source, the Airport Authority notified him that he was violating the lease agreement. The Airport Authority threatened him with eviction and refused to renew his lease. Mr. Rich sued in state court, alleging First Amendment retaliation under 42 U.S.C. § 1983, along with a number of state law claims. The Airport Authority timely removed the matter as a federal question and now moves to dismiss. In response, the plaintiff seeks leave to amend the complaint instanter.

    According to the plaintiff's proposed amended complaint, the use of the generator amounts to "an act of political free speech and public protest." The alleged subject of Mr. Rich's "public protest" is the lease-contract term, to which he

unquestionably agreed, that he must use and pay for metered electric service. Mr. Rich also "protests" the rule prohibiting the use of a portable generator on airport property. Mr. Rich argues that the Airport Authority, by threatening to evict him and refusing to renew the lease while acting under the color of state law, took action that would deter a person of ordinary firmness from engaging this "act of free speech and public protest," i.e., running a portable generator. As a consequence, Mr. Rich maintains, he was deprived of his First Amendment right of free speech.

The Court concludes that neither the operative complaint nor the proposed amended complaint states a plausible First Amendment claim. Mr. Rich's claim under 42 U.S.C. § 1983 will accordingly dismissed with prejudice. The state law claims that remain will be remanded to the Ashtabula County Court of Common Pleas, in an exercise of the Court's discretion pursuant to 28 U.S.C. § 1367(c). Reasons are stated below.

**I. Background**

The plaintiff Joseph A. Rich owns an airplane, and, for eighteen years, he parked his airplane in a hangar space leased from the defendant Airport Authority. On 28 December 2012, Mr. Rich renewed his lease with the Airport Authority for a one-year term commencing 1 January 2013. Under the lease agreement, Mr. Rich agreed to pay "all utilities that may be separately metered in the Hangar Space, if any, including but not limited to, charges for the use of electricity." It is undisputed, in this instance, that Mr. Rich's hangar space was separately metered for electricity and that Mr. Rich was, accordingly, required to pay for metered electrical service. Also pursuant to the lease,

Mr. Rich agreed to abide by the Airport Rules and Regulations. One of the rules prohibited the use of portable generators on airport property. (Doc. 1-1 at 27).

At some point during the lease term, Mr. Rich discontinued electrical service in the hangar, and he installed and used a portable generator as an alternative source of electricity. His use of the generator, in lieu of metered electrical service, went on for an unspecified amount of time. Under the plain language of the parties' agreement, Mr. Rich's actions violated the lease terms, and, not surprisingly, Mr. Rich received a letter from the Airport Authority's legal counsel dated 13 August 2013 stating as much. The letter informed the plaintiff that "[the Airport Authority] considers [the discontinuation of electrical service and use of a generator in the hangar space] to be a significant safety issue and one which it takes very seriously." Mr. Rich was advised that his tenancy at the airport was to be terminated effective midnight 30 September 2013.

The Airport Authority claims that it was within its rights to take this action, since the parties' agreement provides that either party may terminate the lease on 30-days notice without cause. However, Mr. Rich indicates, the lease agreement also provides a right, in certain instances, to cure a "fail[ure] to observe or perform any of the terms, covenants or conditions" of the agreement within ten days of written notice of default. According to Mr. Rich, he removed the offending portable generator and restored electrical service within ten days of the Airport Authority's termination notice. As such, he suggests, his default has been cured and any attempt to evict him was in contravention of the lease agreement.

In any event, it seems that Mr. Rich never was evicted, since he does not explicitly allege it. Moreover, according to the defendants, Mr. Rich remained in

3

possession of the hangar space beyond the lease end date. Mr. Rich maintains, however, that he was injured by the Airport Authority's refusal to renew his lease agreement. The Airport Authority claims it had a right to decline renewal of the lease since the parties had agreed that "there is no automatic renewal of this agreement." (Doc. 1-1 at 12).

On the basis of the above facts, Mr. Rich filed this lawsuit in Ashtabula Court of Common Pleas on 7 October 2013, seeking redress for breach of contract; discriminatory and unreasonable conduct; breach of good faith; declaratory judgment; breach of fiduciary duty and public trust; interference with a contract; fraud; and First Amendment retaliation under 28 U.S.C. § 1983. The named defendants include Ashtabula County Airport Authority, the Board of Trustees for the Airport, and Dwight H. Bowden, who is, allegedly, the principal architect of the "no generators" rule, among other supposedly controversial policies. The defendants removed the case as a federal question on 30 October 2013, and they filed a motion for judgment on the pleadings on 17 December 2013. Instead of responding, the plaintiff filed a motion for leave to file a first amended complaint, which the defendants oppose.

Mr. Rich's proposed first amended complaint drops the claim of fraud and fleshes out some of the details in relation to his purported "act of free speech and public protest." The defendants maintain that the plaintiff should be denied leave to amend the complaint, on the ground of futility, since the first amended complaint fails to cure the deficiencies of the initial complaint. The plaintiff has not replied to the defendant's arguments opposing amendment.

4

As described in more detail below, the defendants' futility argument is well taken. The plaintiff's motion for leave to amend the complaint will accordingly be denied. Further, because the plaintiff fails to state a cognizable First Amendment claim under either complaint, the defendants' motion for judgment on the pleadings will be granted in part, and the plaintiff's federal claim will be dismissed with prejudice.

## II. Standards

### A. Amending the Complaint

Pursuant to Fed.R.Civ.P. 15(a), a court should freely give leave to amend a complaint "when justice so requires." However, leave to amend may be denied where the amendment would be futile. Foman v. Davis, 371 U.S. 178, 182 (1962).

### B. Motion for Judgment on the Pleadings

"For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." JPMorgan Chase Bank, N.A. v. Winget, 510 F.3d 577, 581 (6th Cir.2007) (internal citation and quotation marks omitted).

The same standard for deciding a Rule 12(b)(6) motion to dismiss applies to a Rule 12(c) motion for judgment on the pleadings. Roth v. Guzman, 650 F.3d 603, 605 (6th Cir.2011). A 12(b)(6) motion tests the sufficiency of the complaint. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

(2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

### III. Law and Argument

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that he (1) was deprived of a right, privilege, or immunity secured by the Constitution or law of the United States; and (2) that the deprivation was caused by a person while acting under the color of state law. Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 155 (1978). In this instance, the defendants do not dispute that their actions were taken under the color of state law. As such, the discussion that follows relates only to whether Mr. Rich was deprived of a right secured by the United States Constitution.

In order to prove a constitutional violation based on First Amendment retaliation, a plaintiff must establish the following elements: (1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights. See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977).

Mr. Rich fails to state a plausible claim of retaliation, because the purported "act of free speech" described in the first amended complaint, i.e. running a portable generator to protest the terms of his lease, is not a constitutionally protected activity. In order to prove that conduct, rather than words, is constitutionally protected, a plaintiff must show that his conduct "convey[s] a particularized message" and "the likelihood [is]

6

great that the message [will] be understood by those who view[ ] it." Spence v. Washington, 418 U.S. 405, 411 (1974). In this instance, the plaintiff maintains that running a generator conveys the particularized message that he opposes the "no generator rule."

In the Court's view, there is simply nothing expressive about running a generator. This is not a symbolic act capable of communicating a "specific political, ideological, or religious message[ ]," Neinast v. Bd. of Trustees of Columbus Metro. Library, 190 F. Supp. 2d 1040, 1044 (S.D. Ohio 2002), and a sampling of Supreme Court expressive conduct cases illustrates how far afield Mr. Rich's claim falls. Mr. Rich's conduct is not like the expressive act of marching in a parade, Hurley v. Irish-American Gay, Lesbian & Bisexual Grp. of Bos., 515 U.S. 557 (1995); or burning the United States flag, United States v. Eichman, 496 U.S. 310 (1990); or marching in uniforms displaying the swastika, National Socialist Party of America v. Skokie, 432 U.S. 43 (1977); or wearing armbands to protest the Vietnam War, Tinker v. Des Moines Indep. Cmty. Sch. Dist., 393 U.S. 503, 514 (1969); or saluting (or refusing to salute) the flag, West Virginia State Bd. of Educ. v. Barnette, 319 U.S. 624, 632 (1943); or displaying a red flag in support of the Communist Party, Stromberg v. California, 283 U.S. 359, 369 (1931).

Rather, in this instance, the act of running a generator is simply what it is: running a generator. This places it in the category of non-protected conduct such as "walking down the street or meeting one's friends at a shopping mall," City of Dallas v. Stanglin, 490 U.S. 19, 25 (1989); or smoking a cigarette in a bar or restaurant, Taverns for Tots, Inc. v. City of Toledo, 341 F. Supp. 2d 844, 854 (N.D. Ohio 2004); or going barefoot in the library, Neinast v. Bd. of Trustees of Columbus Metro. Library, 190 F.

Supp. 2d 1040, 1045 (S.D. Ohio 2002). While "[i]t is possible to find some kernel of expression in almost every activity a person undertakes," whatever kernel of meaning exists in running a generator "is not sufficient to bring the activity within the protection of the First Amendment." Stanglin, 490 U.S. at 25.

Furthermore, accepting for the sake of argument that running a generator could convey a particularized message, the Court concludes that there is little, if any, likelihood those who viewed Mr. Rich's conduct would have understood the message he claims to have been sending. Neither the operative complaint nor the proposed first amended complaint contain any facts by which it might reasonably be inferred that the Airport Authority or any of the other defendants understood that Mr. Rich opposed the "no generator rule," or that they might have somehow understood why he was running a generator in direct contravention of his lease agreement. In the Court's view, the only message that Mr. Rich was sending to his landlords was that he was comfortable breaking the airport rules and the terms of his lease.

In sum, neither the initial complaint nor the proposed first amended complaint allege a plausible claim for First Amendment retaliation, because Mr. Rich did not engage in a constitutionally protected activity. That claim will accordingly be dismissed with prejudice.

When, as here, a district court dismisses all claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over claims brought under 28 U.S.C. § 1367(a). "[W]hen deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" City

of Chicago v. International College of Surgeons, 522 U.S. 156, 173 (1997) (quoting Carnegie Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)).

As described above, Mr. Rich brings a number of state law claims in addition to his federal claim. While recognizing that the interests of judicial economy and convenience to the parties may not be best served by remand, the Court decides that the interest of comity outweighs any countervailing factor. This case was and is, at its heart, a dispute based on state law, and the plaintiff's meritless federal claim was plainly subordinate to the central dispute. The Court will accordingly leave resolution of Mr. Rich's state law claims to the tribunal best equipped to answer questions of state law. This matter will accordingly be remanded.

### IV. Conclusion

For the reasons stated, the plaintiff's motion for leave to file a first amended complaint is denied on the ground of futility. The defendants' motion for judgment on the pleadings is granted with respect to Mr. Rich's First Amendment retaliation claim only. That claim is dismissed with prejudice. The remainder of the case is remanded to the Ashtabula County Court of Common Pleas.

IT IS SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE

Date: Aug. 19 2014